# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 06-00081-TLM** |
| **JAN L. THORIAN &** | ) | |
| **MARK E. THORIAN,** | ) | |
| | ) | **Chapter 11** |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| **JAN L. THORIAN &** | ) | |
| **MARK E. THORIAN,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adv. No.  06-06019-TLM** |
| | ) | |
| **BARO ENTERPRISES, LLC;** | ) | |
| **WASHINGTON MUTUAL BANK;** | ) | |
| **FIRST AMERICAN TITLE CO.;** | ) | |
| **U.S. BANK NATIONAL ASSOC.** | ) | |
| **DBA U.S. BANK; KEY BANK,** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

## INTRODUCTION

Jan and Mark Thorian ("Debtors") filed a chapter 11 bankruptcy petition on

MEMORANDUM OF DECISION - 1

February 8, 2006.[1]  Prior to filing their chapter 11 petition, Debtors defaulted on

their home mortgage with the holder of a first priority deed of trust, Washington

Mutual Bank ("WaMu").  WaMu proceeded to foreclose on its interest, and

Debtors' residence (the "Property")[2] was sold to BARO Enterprises, LLC

("BARO").  Debtors filed this adversary proceeding alleging numerous causes of

action based on WaMu's foreclosure and the subsequent sale of the Property to

BARO.

Before the Court are: (1) Debtors' motion to file a second amended

complaint, Doc. No. 103; (2) WaMu's Motion for Summary Judgment, Doc. No.

76 ("WaMu's Motion"); (3) Debtors' Cross-Motion for Summary Judgment, Doc.

No. 89 ("Debtors' Motion"); and (4) BARO's Motion for Summary Judgment,

Doc. No. 94 ("BARO's Motion").

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 1998, Debtors executed a $172,270.00 note secured by a deed

of trust on the Property.  WaMu became the beneficiary under the deed of trust.

Debtors' August 2003 payment to WaMu was unsuccessful due to

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005), became effective October 17, 2005, and applies to this case except as discussed regard to in the § 548 contentions *infra*.

[2] Lot 4 of Block 3, Warm Springs Terrace, per plat filed in Book 13 of Plats at p. 799, Records of Ada County, Idaho (1923 Bob's Drive, Boise, ID).

MEMORANDUM OF DECISION - 2

insufficient funds.[3]  The parties dispute Debtors' subsequent attempts to make

payments and WaMu's ability to accept electronic payments.  The parties do not

dispute that on December 5, 2003, a Notice of Default was filed in Ada County for

Debtors' failure to make the August 2003 through November 2003 payments.

Doc. Nos. 78-86, 88 (hereinafter "Stover Aff.") at Doc. No. 82, part 3 at Ex. G.[4]

Beginning in April 2004, Debtors worked with Leslie Quarterman of

WaMu's Loss Mitigation Department to establish a repayment plan.  While the

parties negotiated a possible loan modification or "workout," Ms. Quarterman

postponed for one month the foreclosure sale scheduled in July 2004 and then

cancelled the sale scheduled in August 2004.  Doc. No. 77 (hereinafter "Bovee

Aff.") at part 6, Ex. G.

In September 2004, WaMu and Debtors executed a twelve-month

repayment agreement (the "First Forbearance Plan"), which required an initial

payment of $6,000.00 by September 14, 2004, followed by twelve monthly

payments of $2,624.78 beginning on October 1, 2004.  Bovee Aff. at part 8, Ex. I.

---

[3]  WaMu argues Debtors had a history of making late payments dating back to April 2000; failing to pay property taxes beginning in 1999; and failing to insure the Property, requiring WaMu to insure it.  Debtors dispute these allegations.  However, these factual disputes are not material to the motions addressed in this Decision.

[4]  WaMu filed its affidavits and accompanying exhibits in support of its motion for summary judgment using multiple docket entries.  There does not appear to be any method or reason as to how they were separated, organized and filed on the Court's docket, making citation to the record difficult.

MEMORANDUM OF DECISION - 3

Debtors did not timely make the initial $6,000.00 payment. However, on

November 3, 2004, Debtors paid $8,624.78[5] and the plan was activated. Bovee

Aff. at part 6, Ex. G and part 8, Ex. L. Though Debtors' attempts and ability to

make the December 2004 payment[6] are disputed, it is clear that the First

Forbearance Plan was terminated and foreclosure efforts were again initiated.

Bovee Aff. at part 8, Ex. M.

On January 31, 2005, a Notice of Default was recorded in Ada County,

stating that Debtors were delinquent on their payments from April through

December 2004. Stover Aff. at Doc. No. 82, part 3 at Ex. G. The Notice of

Default and the Notice of Trustee's Sale were served on Debtors by certified mail

on February 9, 2005 and by personal service on February 13, 2005. The notices

were posted at the Property, and the Notice of Trustee's Sale was published in the

Idaho Statesman on February 14, 21, 28 and March 7, 2005. The sale was set and

noticed for June 9, 2005.

Ms. Quarterman again attempted to help Debtors avoid foreclosure. On

March 4, 2005, she sent them a letter requesting their two most recent paystubs.

Bovee Aff., part 8 at Ex. N. Debtors did not respond to this request, and on May

---

[5] This amount represented the initial $6,000.00 and the $2,624.78 October 2004 payment.

[6] In February, WaMu received a personal check from Debtors, dated December 30, 2004, in the amount of their regular monthly payment, $1,437.15, but this check was returned. *See* Doc. No. 24 at 7.

MEMORANDUM OF DECISION - 4

20, 2005, Ms. Quarterman sent them a letter stating that loss mitigation efforts were denied due to Debtors' noncompliance, inability to be reached by phone, and failure to provide requested information. Bovee Aff., part 8 at Ex. O.

On June 3, 2005, Mr. Thorian called Ms. Quarterman regarding the denial letter. Bovee Aff., part 6 at Ex. G. In that conversation, the foreclosure sale scheduled for June 9, 2005 was discussed. However, after Ms. Quarterman and Mr. Thorian agreed to a ninety-day special forbearance plan (the "SFP"), Ms. Quarterman postponed the June 9, 2005 foreclosure sale.[7] *Id.* In that ninety days, WaMu would determine if Debtors qualified for a loan modification or workout.

The SFP required payments of: (1) $2,000.00 by June 6, 2005; (2) $1,500.00 by July 6, 2005; and (3) $1,500.00 by August 6, 2005. *Id.*, part 8 at Ex. P. Debtors allege that when discussing the SFP, Ms. Quarterman stated the scheduled June 9 foreclosure sale would be "stopped." *See* Mark Thorian Dec. 19, 2006 Depo., Doc. No. 90, part 15 at pages 146 - 369 (hereinafter "Thorian Depo.") at 261. Ms. Quarterman, however, believes she said the sale would be "postponed." Leslie Quarterman July 16, 2007 Depo., Doc. No. 90, part 3 at pages 1 - 86 (hereinafter "Quarterman Depo.") at 22 .

Ms. Quarterman faxed the SFP to Debtors on June 3, 2005. Bovee Aff.,

---

[7] Ms. Quarterman postponed the foreclosure sale by causing FATCO to announce, on June 9, that the sale was rescheduled for July 7. Between June 2005 and September 2005, Ms. Quarterman postponed the sale four times. The scheduled date of sale, pursuant to the last postponement, was September 29, 2005. *See* Bovee Aff. part 6 at Ex. G and part 7 at Ex. H.

MEMORANDUM OF DECISION - 5

part 8 at Ex. Q.  Attached was a financial statement Debtors were asked to complete and return so Ms. Quarterman could determine whether they qualified for a permanent workout plan.  The fax cover sheet asked Mr. Thorian to "include a brief letter explaining the reason for this default."  *Id.*

Mr. Thorian responded on June 7, 2005, faxing Ms. Quarterman a June 6 letter, a completed financial statement, and Mrs. Thorian's paystub for the period ending December 31, 2004.  Bovee Aff., part 8 at Ex. R.  The fax cover sheet explains that Debtors had only "a yearly summary on the income.  The pay is automatically put into our account without any paperwork, but nothing has changed for this year."  *Id.*

In August 2005, Ms. Quarterman requested Debtors complete another financial statement; provide their most recent paystubs for both Debtors; and include a letter explaining the reason for their delinquency.  Bovee Aff., part 8 at Exs. S, T.[8]  Debtors did not respond to her requests because, in their view, Ms. Quarterman already had that information.  However, they did not communicate that position to Ms. Quarterman at the time.  WaMu therefore elected to proceed with foreclosure.

---

[8] Ms. Quarterman's response states, "A preliminary review of the documents you submitted indicates that supplemental information is needed to complete our analysis."  Bovee Aff., part 8 at Ex. S.  The letter does not address specifically why she is requesting additional information and, in reciting the items needed, does not say why Debtors' previously proffered documents were deficient.

MEMORANDUM OF DECISION - 6

On September 29, 2005, a deed of trust foreclosure and trustee's sale was conducted by First American Title Company ("FATCO"). BARO was the successful bidder and received the Property for $185,000.00. FATCO granted BARO a trustee's deed that was recorded that day.

In October, Debtors commenced a state court action against BARO, WaMu and FATCO. *See* Case No. 06-00081-TLM, Doc. No. 8 at attach. Debtors' February 8, 2006 bankruptcy petition was filed on the eve of BARO's summary judgment hearing before the state court. Debtors claimed ownership of the Property in their schedules and alleged a fair market value of $650,000.00 with $313,517.72 of secured debt[9] against it. Debtors also claimed as assets on schedule B potential recoveries from the suit against BARO, WaMu, FATCO,[10] US Bank and Key Bank.

The day after Debtors filed their chapter 11 bankruptcy petition, BARO filed a motion for relief from the automatic stay to allow the state court litigation to proceed. *Id.* Debtors then commenced this adversary proceeding on February 22, 2006. BARO responded by filing a motion to dismiss the adversary.

---

[9] This amount represents: (1) Washington Mutual's first deed of trust in the amount of $150,000.00; (2) US Bank's second position lien in the amount of $48,517.72; and (3) Key Bank's third position lien in the amount of $115,000.00. Case No. 06-00081-TLM, Doc. No. 25 at schedule D.

[10] FATCO is the trustee under the terms of the deed of trust foreclosed upon by WaMu. FATCO was dismissed from the instant adversary proceeding by stipulation. *See* Doc. Nos. 51, 56.

MEMORANDUM OF DECISION - 7

On April 10, 2006, the Court held a joint hearing on the § 362 motion and

the motion to dismiss the adversary proceeding.  By an April 24, 2006

Memorandum of Decision and Order, the Court denied § 362 relief and denied the

motion to dismiss.  *See* Doc. Nos. 26, 27; *see also* Case No. 06-00081-TLM*,* Doc.

Nos. 42, 43.  The Court's conditional denial of BARO's motion for relief from the

automatic stay incorporated terms of a January state court order requiring Debtors

to pay, on behalf of BARO, $1,500.00 per month.  At BARO's request, the

Decision and Order were modified to require payments into the Court's register.

*See* Case No. 06-00081-TLM, Doc. Nos. 44, 47.

Answers were filed in the adversary proceeding soon after the Court's April

ruling on the motion to dismiss.  A status conference was held on August 31, 2006.

The Court lifted any limitations on the commencement of discovery and allowed

90 days, at the parties' request, for the matter to develop.  Debtors were ordered to

file any amended complaint within 30 days.

An amended complaint, Doc. No. 38 (the "Amended Complaint"), was filed

on October 2, 2006, alleging nine counts: (1) fraudulent transfer under 11 U.S.C.

§ 548; (2) a claim against junior secured creditors; (3) lien reinstatement; (4)

default cure; (5) breach of contract; (6) breach of the covenant of good faith and

fair dealing; (7) fraud; (8) violations of the Real Estate Settlement Procedures Act,

12 U.S.C. §§ 2601-2617 ("RESPA"); and (9) violations of the Idaho Consumer

MEMORANDUM OF DECISION - 8

Protection Act, Idaho Code §§ 48-601 to -619 ("ICPA").

The Amended Complaint was answered,[11] and WaMu filed a motion to dismiss counts eight (RESPA) and nine (ICPA) under Fed. R. Bankr. P. 7012 and Fed. R. Civ. P. 12(b)(6). Debtors opposed the motion to dismiss but no hearing was ever set by either party.

Discovery, and discovery disputes, ensued. The Court ordered another status conference. At the April 30, 2007 conference, the Court ordered non-expert discovery to be completed by July 16, 2007; expert witness disclosure by July 31, 2007; expert discovery concluded by September 28, 2007; and all pretrial motions filed by October 19, 2007. The Court indicated a trial setting would await adjudication of dispositive motions. Pursuant to the Court's standard practice, the setting of such deadlines was predicated on all parties' agreement that the pleadings were complete and fully settled.

Almost five months later, in September 2007, Debtors moved for a "limited extension" of discovery deadlines. *See* Doc. No. 69. Over WaMu's objection, the

---

[11] *See* Doc. Nos. 39 (FATCO's answer), 40 (BARO's answer), 41 (U.S. Bank's answer) and 43 (KeyBank's answer). Debtors correctly note, *see* Doc. No. 109 at 2, that WaMu did not file an answer to the Amended Complaint. However, Debtors did not move for default on this basis. Nor did they raise the issue of the missing answer until well after a pretrial conference had occurred at which all parties agreed the pleadings were settled, and after discovery deadlines expired, and after WaMu's Motion, Debtors' Motion and BARO's Motion had all been filed. Noting an absence of an answer came only in response to WaMu's objection to Debtors' motion for leave to file a second amended complaint, a motion discussed in more detail *infra*. Given the state of the record, the Court deems the additional causes of action and allegations in the Amended Complaint denied by WaMu.

MEMORANDUM OF DECISION - 9

Court extended the non-expert discovery deadline to October 15, 2007, the

deadline for discovery of previously disclosed experts to November 1, 2007, and

the bar date for pretrial motions to November 15, 2007.

On October 3, 2007, WaMu's Motion was filed. In it, WaMu moved for

summary judgment on counts one (fraudulent transfer), five (breach of contract),

six (breach of covenant of good faith and fair dealing), seven (fraud), eight

(RESPA) and nine (ICPA). Doc. No. 76. On October 11, 2007, Debtors' Motion

was filed. It was styled as a response and cross motion for summary judgment

against WaMu and against BARO, at that point a non-moving party.[12] Debtors did

not identify the counts in their Amended Complaint that were subject to their

motion, but described fraudulent transfer (count one), breach of contract (counts

five and six) and RESPA (count eight). In their briefing, Debtors indicated they

would dismiss count nine (ICPA) of the Amended Complaint. *See* Doc. No. 92 at

18. On October 16, 2007, BARO's Motion was filed. BARO moved for summary

judgment on count one (fraudulent transfer). Doc. No. 94.

On November 5, 2007, Debtors moved for leave to file a second amended

complaint "to clarify the issues, and to delete reference to the cause of action under

the Consumer Protection Act." Doc. No. 103. WaMu opposed the motion. *See*

---

[12] Debtors' Motion asks the Court to deny WaMu's Motion and "to the extent that BARO files a Motion based on the same or similar grounds, or joins in WaMu's Motion for summary judgment, to deny BARO's motion." Doc. No. 89.

MEMORANDUM OF DECISION - 10

Doc. No. 107.

**DISCUSSION AND DISPOSITION**

    **A.**    **Debtors' motion to amend their Amended Complaint**

        **1.**    **Standards**

Federal Rule of Bankruptcy Procedure 7015 incorporates Federal Rule of

Civil Procedure 15(a) which instructs that "leave [to amend pleadings] shall be

freely given when justice so requires." "Whether leave to amend should be

granted is generally determined by considering the following factors: (1) undue

delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing

party." *Borough v. Rogstad (In re Rogstad)*, 126 F.3d 1224, 1228 (9th Cir. 1997)

(citation omitted). Undue delay should be considered by the Court, but it alone is

insufficient to justify denial of a motion for leave to amend. *Bowles v. Reade*, 198

F.3d 752, 758 (9th Cir. 1999).

        **2.**    **Debtors' motion to amend will be denied**

While the deadline for pretrial motions was extended to November 15, 2007

and the motion to amend is not barred for that reason, it nevertheless is not

"timely." Debtors have not justified their extended and undue delay and the Court

finds allowing such an amendment would be prejudicial to the defendants.

Debtors filed a state court action in October, 2005 and that action proceeded

to summary judgment before Debtors filed bankruptcy. Debtors filed the initial

MEMORANDUM OF DECISION - 11

adversary complaint in February, 2006.  Six months later the Court conducted the

August 2006 status conference, and Debtors were given an additional 30 days

within which to amend.  They did so in October, 2006.  The Amended Complaint

added counts six (covenant of good faith and fair dealing), seven (fraud), eight

(RESPA) and nine (ICPA).  When the Court, some five months later, held the

April 2007 pretrial status conference, the parties agreed the pleadings were

"settled" and no further amendments were required.  Thus, for well over a year

(October, 2006 to November, 2007), discovery and pretrial preparations were

based on this pleading foundation.

In addition to the completion of discovery by the October 15 and November

1, 2007 deadlines, WaMu and BARO each filed motions for partial summary

judgment based on the Amended Complaint.[13]  It was only after all motions were

filed that Debtors requested leave to further amend their Amended Complaint.

Debtors state that the proposed second amended complaint would "clarify

the issues, and . . . delete reference to the cause of action under the Consumer

Protection Act."  Doc. No. 103.  But they did not cogently explain what would be

"clarified" by the proposed second amendment.  Determining the changes

proposed required a detailed side-by-side comparison of the Amended Complaint

---

[13] As discussed *infra*, Debtors also filed for partial summary judgment three weeks prior
to moving for leave to amend their Amended Complaint.  Certain of their arguments were based
on the allegations not yet in pleadings before the Court.

MEMORANDUM OF DECISION - 12

filed in October 2006 with that proposed in November 2007 (on the eve of hearing the dispositive motions) since Debtors did not provide a "red line" version or otherwise explain the changes.

Having independently undertaken review of Debtors' proposed second amended complaint, the Court notes that several allegations regarding the deed of trust and inadequate notice under the deed of trust are added to the complaint. Specifically, count five (breach of contract) – which was originally focused on breach of the SFP – would include new allegations of breach of the notice provisions in the deed of trust. While "added" to count five, in reality, Debtors' proposed amendment adds a cause of action for breach of another contract, the deed of trust.

To date, and under the Amended Complaint, the litigation concerned alleged breaches of the SFP, alleged failures to properly credit payments under the SFP, alleged failures to accurately state amounts in default in the notice of default, and alleged fraud by WaMu.  All discovery concluded November 1, prior to Debtors' November 5 motion.  To add new causes of action and change the focus of this litigation after discovery has been completed, and after defendants have invested significant time and money in preparing and presenting summary judgment motions on the pleadings would be prejudicial.

Debtors assert that adding these allegations will not require any additional

MEMORANDUM OF DECISION - 13

discovery as "Defendants have taken extensive depositions of Mr. and Mrs.

Thorian and participated in discovery of Ms. Quartermann and Grimm." Doc. No.

109. However, WaMu and BARO conducted that extensive discovery based on

the allegations in the Amended Complaint. To suggest that no new discovery

would be needed having now alleged different facts to support Debtors' causes of

action and shifted the focus and basis for relief is unpersuasive.

Debtors further assert that the defendants will not be prejudiced because

they have had an opportunity to respond to the altered and additional facts found in

the proposed second amended complaint because Debtors' Motion and supporting

memorandum are based on the arguments and allegations from their later proposed

second amended complaint.[14] While WaMu and BARO have indeed responded in

briefing,[15] that does not mean the Court should somehow "deem" the complaint

amended or that prejudice would not be suffered by such an amendment.

Finally, the Court certainly need not grant Debtors' motion for leave to file

a second amended complaint in order to eliminate count nine alleging violations of

the ICPA. Granting WaMu's pending motion for summary judgment on count

nine will remove that count without altering other aspects of the Amended

---

[14] Debtors' Motion was filed on October 11, 2007, and they advanced arguments outside the then extant pleadings. As noted, it was over three weeks later that they sought to change the pleading foundation.

[15] Their responses do not concede the second amended complaint is properly before the Court or should be allowed.

MEMORANDUM OF DECISION - 14

Complaint.  As Debtors' motion to amend demonstrates, Debtors do not oppose elimination of that cause.  To the extent Debtors' motion to amend focuses on Debtors' desire to remove count nine, it is unnecessary.

For the foregoing reasons, Debtors' motion for leave to amend, Doc. No. 103, will be denied.

### B.    Summary judgment motions

#### 1.    Standards

Summary judgment may be granted if, when the evidence is viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(e), incorporated by Fed. R. Bankr. P. 7056;  *Leimbach v. Lane (In re Lane)*, 302 B.R. 75, 81, 03.4 I.B.C.R. 213, 215 (Bankr. D. Idaho 2003) (citing *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)).

The Court does not weigh evidence in resolving such motions but, rather, determines only whether a material factual dispute remains for trial.  *Leimbach*, 302 B.R. at 81 (citing *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997)).  A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party.  A fact is "material" if it might affect the outcome of the case.  *Id.* (citing *Far Out Prods.*, 247 F.3d at 992).

MEMORANDUM OF DECISION - 15

The initial burden of showing there is no genuine issue of material fact rests on the moving party. *Esposito v. Noyes (In re Lake Country Invs.),* 255 B.R. 588, 597, 00.4 I.B.C.R. 175, 178 (Bankr. D. Idaho 2000) (citing *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998)). If the non-moving party bears the ultimate burden of proof on an element at trial, that party must make a showing sufficient to establish the existence of that element in order to survive a motion for summary judgment. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

### 2.    Count one: fraudulent transfer under § 548

As noted, count one of the Amended Complaint alleges a fraudulent transfer under § 548(a). Section 548(a)(1) provides, in pertinent part, that the trustee[16] may avoid: (1) any transfer of an interest of the debtor in property, or any obligation incurred by the debtor; (2) made or incurred on or within one year before the date of the filing of the petition; (3) if the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation; and (4) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. 11 U.S.C. § 548(a)(1)(B) (2005).[17] A foreclosure sale is treated as a transfer from the debtor

---

[16] Debtors, as chapter 11 debtors in possession, may exercise the avoidance powers of a trustee. *See* § 1107.

[17] BAPCPA changed the § 548(a)(1) reach back period from one year to two. That particular amendment became effective for cases commenced more than one year after BAPCPA's enactment on April 20, 2005. *See* Pub. L. No. 109-8 at § 1406. Here, Debtors'
(continued...)

MEMORANDUM OF DECISION - 16

for purposes of 11 U.S.C. § 548.  *Lindsay v. Beneficial Reinsurance Co. (In re Lindsay)*, 59 F.3d 942, 947 (9th Cir. 1995); 11 U.S.C. § 101(54).

   The parties do not dispute that Debtors had an interest in the Property or that the Property was transferred within one year before Debtors' bankruptcy filing.  WaMu and BARO question whether the transfer rendered Debtors insolvent.  But they base their summary judgment arguments on whether Debtors received less than a reasonably equivalent value from the sale of the Property as a matter of law.

### a.     Reasonably equivalent value

   In *BFP v. Resolution Trust Corporation*, 511 U.S. 531 (1994), the Supreme Court determined that "reasonably equivalent value" in a foreclosure situation such as this is the price received at that sale if properly conducted under state law.  It stated: "We deem, as the law has always deemed, that the fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with."  511 U.S. at 545.  Furthermore,"[a]ny irregularity in the conduct of the sale that would permit judicial invalidation of the sale under applicable state law deprives the sale price of its conclusive force . . .

---

[17](...continued)
bankruptcy case commenced on February 8, 2006, less than a year after the enactment of BAPCPA.  Therefore, pre-BAPCPA § 548(a)(1) applies and the transfer must have occurred within a year of the bankruptcy filing.  The transfer here occurred on September 29, 2005, within one year of the bankruptcy filing.

MEMORANDUM OF DECISION - 17

and the transfer may be avoided if the price received was not reasonably equivalent to the property's actual value at the time of the sale (which we think would be the price that would have been received if the foreclosure sale had proceeded according to law.)" *Id*. at 545-546.

To prevail on their § 548 claim at trial, Debtors have the burden to prove each element. Thus, they have the burden of showing the sale was not conducted in accord with Idaho law (eliminating the presumption or "conclusive force") and that the price received was not reasonably equivalent to the price they would have received if the sale had been properly conducted under law. *Id.; see also In re Durso Supermarkets, Inc*., 193 B.R. 682, 696 (Bankr. S.D.N.Y. 1996). In their Amended Complaint, Debtors allege the sale was "irregular" based on WaMu's alleged conduct, including: neglecting to properly apply Debtors' payments; misstating the default amount on the Notice of Default; making false representations that WaMu would not pursue foreclosure; losing Debtors' January 2005 payment; and pursuing foreclosure without compliance with notice provisions under Idaho Code § 45-1506. *See* Doc. No. 38 at ¶ 11.

### b.    Idaho law

Title 45, Chapter 15 of the Idaho Code governs foreclosure of trust deeds. Section 45-1505 provides that a trustee may foreclose by advertisement and sale if: (1) the deed is recorded in the mortgage records in the county where the property is situated; (2) there is a default by the grantor; (3) the trustee or

MEMORANDUM OF DECISION - 18

beneficiary has filed a notice of default identifying the deed of trust by stating the

names of the trustors and including a statement that a breach of the obligation has

occurred; and (4) the trustee or beneficiary has mailed a copy of the notice to any

person requesting such notice.  I.C. § 45-1505.  Idaho Code § 45-1506 governs

notice of sale and requires, among other things, publication of the notice in a

newspaper of general circulation.

### c.    WaMu's and BARO's motions will be granted

WaMu and BARO argue that Debtors have not shown the sale should be

voided under Idaho law as the sale complied with Idaho Code Title 45, Chapter

15.  The Court agrees.[18]

Idaho case law makes it clear that "the terms of the trust deed foreclosure

statutes must be strictly complied with in order to satisfy the due process

requirements of notice and opportunity to be heard."  *Sec. Pac. Fin. Corp. v.*

*Bishop*, 704 P.2d 357, 359 (Idaho Ct. App. 1985).  Here, Debtors have not shown

that WaMU failed to comply with those statutes.

BARO and Debtors signed and submitted a stipulation establishing that

FATCO: (1) complied with Idaho Code § 45-1506(8) in rescheduling and later

---

[18]  Embedded in BARO's summary judgment argument is BARO's belief that it is a good faith purchaser who retains title pursuant to Idaho Code § 45-1510.  This argument pertains to BARO's counterclaim, Doc. No. 40, alleging that BARO has legal title to the Property and that Debtors are tenants-at-sufferance pursuant to Idaho Code § 45-1506(11).  The counterclaim seeks a writ of ejectment and money damages until Debtors vacate the premises.  Neither BARO nor Debtors moved for summary judgment on the counterclaim.

MEMORANDUM OF DECISION - 19

crying the sale; (2) complied with the notice provisions of Idaho Code § 45-1506;

and (3) "did not cause any defects in the foreclosure process that could or would

have caused a reduction of the purchase price." Doc. No. 102, ¶¶ 11, 12, 13 and

22.

Based on the evidence presented, there is also no genuine issue of material

fact in dispute regarding violation of Idaho Code § 45-1505. The deed of trust

was recorded; Debtors were in default; a notice of default stating Debtors' breach

was recorded; and Debtors were properly served. Stover Aff. at Doc. No. 82 part

3 at Ex. G.[19] Similarly, notice of sale was published in the Idaho Statesman,

demonstrating compliance with Idaho Code § 45-1506. Thus, WaMu and BARO

satisfied their initial burden on summary judgment.

Debtors provide no evidence that the sale did not comply with Idaho Code

§§ 45-1505 and 45-1506. In fact, in dismissing FATCO they appear to concede

the factual basis for the defense on count one.[20] Their memorandum also states "it

is not a defense that WaMu complied with the provisions of Idaho Code §§ 45-

---

[19] Debtors allege as a basis for relief under § 548 in their Amended Complaint several
fraudulent acts on the part of WaMu, including misstating the amount in default and failing to
apply Debtors' payments. Their motion for summary judgment does not address these allegations
under § 548 or provide legal authority that an inaccuracy in the stated amount of default (as
opposed to the existence of any default, *see Taylor v. Just*, 59 P.3d 308 (Idaho 2002), discussed
*infra*) would vitiate a notice of default or allow an Idaho court to set aside the foreclosure sale as
irregular. The Court has considered Debtors' legal arguments as they pertain to the accuracy of
the default amount in the notice of default and finds them unpersuasive in the § 548 context.

[20] Debtors and BARO stipulated that FATCO complied with the notice provisions of
Idaho Code § 45-1506, subsections 2, 5, 6 and 7. Doc. No. 102, ¶ 12.

MEMORANDUM OF DECISION - 20

1505 and 45-1506." In arguing that "it is not a defense that WaMu complied" with the Idaho Code, Debtors appear to concede statutory compliance.

Instead of focusing on violations of the Idaho Code or any failures in the noticing of sale that would affect the regularity of the sale or the price received at the sale, Debtors focus on WaMu's failure to provide notice as required by the deed of trust. Doc. No. 99 at 6. They argue that the notices they did receive were "fatally flawed" based on WaMu's lack of compliance with the notice requirements found in paragraph 21 of the deed of trust.[21] In essence, they argue

---

[21] Debtors' arguments regarding the inadequacy in the notice under the deed of trust are raised for the first time in their response to WaMu's Motion and their memorandum in support of Debtors' Motion. Specifically, Debtors' response to WaMu's Motion states: "While the title company may have proceeded correctly by its own procedures and the State minimum notice requirements, it is clear that the lack of notice under the contract [referring to paragraph 21 of the deed of trust] is such a breach that the sale could not have been 'regularly conducted.'" Doc. No. 92 at 16. The provisions of paragraph 21 state in relevant part:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . .. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by the Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law.

> If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold, and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to other persons prescribed by applicable law. Trustee shall give public notice of sale to the

(continued...)

MEMORANDUM OF DECISION - 21

that WaMu's alleged breach of contract is sufficient to invalidate the sale under

Idaho law, deprive the sales price of its conclusive force and allow the Court to

consider other evidence regarding whether Debtors received reasonably equivalent

value at the foreclosure sale.

The Court disagrees. *BFP* does not direct the Court to review WaMu's

compliance with its contract with Debtors unless the alleged breach of or failure to

comply with that contract violates state law in a way that would permit judicial

invalidation of the foreclosure sale. Therefore, the issue is whether, under Idaho

law, that alleged breach would support a court's invalidation of the otherwise

regularly noticed and conducted sale (and, thus under *BFP*, defeat the presumption

accorded the sales price in a § 548 analysis). Debtors have not established that the

alleged breach of the deed of trust (*i.e.*, failing to provide to them a specific notice

of their right to reinstate an accelerated indebtedness) would vitiate the statutory

foreclosure process as opposed to, for example, simply providing a basis for a

claim for breach of contract.

Debtors rely in part on *Taylor v. Just*, 59 P.3d 308, 313 (Idaho 2002). In

---

[21] (...continued)
persons and in the manner prescribed by applicable law. Afer the time required by
applicable law, Trustee, without demand on Borrower, shall sell the Property at
public auction to the highest bidder a the time and place and under the terms
designated in the notice of sale in one or more parcels and in any order Trustee
determines. Trustee may postpone sale of all or any parcel of the Property by public
announcement at the time and place of any previously scheduled sale. Lender or its
designee may purchase the Property at any sale.

MEMORANDUM OF DECISION - 22

*Taylor*, the court voided a foreclosure sale because it determined a default, which is required in order to sell real property under a deed of trust under Idaho Code § 45-1505(2), did not in fact exist.  There, the borrower and lender entered into an agreement that eliminated the default by altering the terms of the promissory note so that no sums were past due.  That agreement was executed prior to the foreclosure sale.  Here, Debtors do not argue that an arrearage or default did not exist under the deed of trust, as was the case in *Taylor*.  Debtors state that they "could have raised the funds to pay the *arrearage*," Doc. No. 92 at 16, conceding that an arrearage did exist.  Their reliance on *Taylor* is misplaced.

Debtors argue that "the sale would not have occurred had WaMu informed [Debtors] of their decision [not to modify the loan] in a timely fashion."  Debtors have not established that the alleged acts of WaMu, (*i.e.*, not notifying Debtors that it was proceeding with foreclosure instead of a workout or modification) would allow an Idaho court to invalidate the foreclosure sale under Idaho law.

Furthermore, even if the Court were to find that the foreclosure sale was not regularly conducted under Idaho law due to WaMu's alleged failure to provide the disputed notice (of a right to reinstate an accelerated debt) under the deed of trust, such a finding would only eliminate the *presumption* that the foreclosure sale price was the reasonably equivalent value for the Property.  In order to prevail under § 548, Debtors would still bear the burden of establishing, as held in *BFP*, that "the price received was not reasonably equivalent to the [P]roperty's actual value

MEMORANDUM OF DECISION - 23

at the time of the sale." 511 U.S. at 546. The Supreme Court opined that "we think [that] would be the price that would have been received if the foreclosure sale had proceeded according to law." *Id*.

Debtors' argument is that, had they received additional paragraph 21 notice, they would have (somehow) raised the funds needed to cure the default.[22] But Debtors have not shown a genuine issue as to what price for the Property other than or different from what BARO paid "would have been received if the foreclosure sale had proceeded" with that paragraph 21 notice having been provided. In short, Debtors attack the validity of the foreclosure sale on grounds of inadequate notice to them, and that the sale was postponed, not cancelled, and not on any statutory defect that affected notice to others or affected the sales price. They in fact concede that FATCO "did not cause any defects in the foreclosure process that could or would have caused a reduction of the purchase price." Doc. No. 102 at ¶ 22. The Debtors have not shown, given such a concession, a material factual dispute regarding the adequacy of the price received at the foreclosure sale.

Therefore, the Court finds as a matter of law that the price received upon the sale of the Property at the properly conducted foreclosure sale was the

---

[22] *See* Doc. No. 92 at 16. Debtors' argument ignores the fact that, even with the paragraph 21 notice, they still would not have attended the September 29, 2005 sale or cured their default by that date, being unaware of the several postponements that had occurred between June and September. That is to say, Debtors' arguments about an irregularly conducted sale are predicated on both the absent paragraph 21 notice and the alleged failure to inform them that the sales from and after June 9, 2005, were only postponed, not cancelled.

MEMORANDUM OF DECISION - 24

reasonably equivalent value for the Property.  The Court will grant WaMu's and

BARO's Motions on count one and deny Debtors' Motion on that count.

### 3.    Count five: breach of contract

Debtors allege that WaMu breached the SFP by not entering into a loan

modification agreement and instead initiating foreclosure proceedings.  This claim

is based upon the provision in the SFP allowing Debtors "90 days to prepare for a

loan modification" and Ms. Quarterman's alleged statement that the foreclosure

sale was "stopped."  The "contract" allegedly breached was the SFP.[23]

Formation of a valid contract requires a "meeting of the minds as evidenced

by a manifestation of mutual intent to contract."  *Inland Title Co. v. Comstock*,

779 P.2d 15, 17 (Idaho 1989).  "In a dispute over contract formation, it is

incumbent upon the plaintiff to prove a distinct and common understanding

between the parties."  *Id.*  Assuming a valid contract, a breach occurs when there

is a failure to perform a contractual duty.  *Shawver v. Huckleberry Estates, LLC*,

93 P.3d 685, 692 (Idaho 2004).

Interpretation of a contract begins with the language of the contract.

*Independence Lead Mines Co. v. Hecla Mining Co.*, 137 P.3d 409, 413 (Idaho

---

[23] As noted, in subsequent pleadings and at hearing, Debtors also argued breach of the
notice provisions in the deed of trust.  Such allegations are not found in count five of the
Amended Complaint.  Rather, Debtors attempted to add those allegations in their second amended
complaint.  This Court has determined Debtors' motion for leave to amend will be denied.
Therefore, this cause of action is not properly before the Court and the Court will not address
Debtors' newly articulated breach of contract claim under the deed of trust.

MEMORANDUM OF DECISION - 25

2006).  If the language is unambiguous, its interpretation is a question of law and

the contract will be given its plain meaning.  *Shawver,* 93 P.3d at 692.  Where the

contract is ambiguous, however, its interpretation is a question of fact.  *Id.*  "A

contract is ambiguous if it is reasonably subject to conflicting interpretations."

*Lamprecht v. Jordan, LLC,* 75 P.3d 743, 746 (Idaho 2003).  Whether a contract is

ambiguous is a question of law.  *Id.; Shawver,* 93 P.3d at 692.

Debtors argue that the SFP was a contract and that WaMu breached it by

failing to consider Debtors' financial information for a loan modification and

failing to tender a loan modification.  *See* Doc. No. 76, part 2 at 10.  WaMu argues

that the language of the SFP does not, by its terms, obligate WaMu to modify the

loan, that the parties never agreed to terms for a modification and that the SFP

does not contain such terms.

After reviewing the record, the Court concludes material, factual disputes

preclude summary judgment in favor of either party.  Such facts include the terms

of the SFP (including the intent of the parties in granting Debtors time to "prepare"

for a loan modification as that phrase is used in the SFP); Debtors' payments

under the SFP; WaMu's acceptance and handling of those payments; Ms.

Quarterman's possession and evaluation of Debtors' financial documents for a

loan modification; and the status of the foreclosure process and the parties'

agreement regarding that process given Ms. Quarterman's statements and the

SFP's language that a failure to pay would result in a foreclosure sale being

MEMORANDUM OF DECISION - 26

"initiated." Therefore, WaMu's and Debtors' Motions for summary judgment on count five, as regarding the SFP, will be denied.

### 4. Count six: breach of covenant of good faith and fair dealing

In every contract there is an implied duty of good faith and fair dealing. *Idaho First Nat'l Bank v. Bliss Valley Foods*, 824 P.2d 841 (Idaho 1991). The implied covenant of good faith and fair dealings "requires that the parties perform, in good faith, the obligations imposed by their agreement . . . Thus, the duty arises only in connection with terms agreed to by the parties . . . ." *Id*. at 863. Moreover, the covenant is violated only when a party "violates, nullifies or significantly impairs any benefit of the . . . contract." *Id*. at 864 (citation omitted).

WaMu and Debtors moved for summary judgment on Debtors' claim that WaMu breached the covenant of good faith and fair dealing by failing to modify the loan as contemplated by the parties in executing the SFP. Having determined that there are disputed issues of material fact as to what the terms and obligations were under the SFP in this case, and that count five (breach of contract) is not susceptible to summary judgment, the Court is obviously not in a position to determine as a matter of law whether either party breached the covenant of good faith implied in any such contract. Both parties' motions on count six, as regarding the SFP, will be denied.

MEMORANDUM OF DECISION - 27

### 5.    Count seven: fraud

To successfully prove fraud, a plaintiff must establish nine elements: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Jenkins v. Boise Cascade Corp.,* 108 P.3d 380, 386 (Idaho 2005).

Debtors' fraud claim is based on Ms. Quarterman's statements and actions regarding the status of the foreclosure sale while the parties negotiated the SFP and a permanent modification.  Debtors allege Ms. Quarterman stated that she would "stop" the sale and provide a modified repayment plan at the conclusion of the SFP.  Thorian Depo. at 261.  Ms. Quarterman believes she said she would "postpone" the sale and that she would analyze during the 90 days whether a modification was possible.  Quarterman Depo. at 22.

Generally an action for fraud will not lie for statements of future events. However, "an exception to the general rule exists where a false prediction or opinion is given with the intent to mislead." *Country Cove Development, Inc. v. May*, 150 P.3d 288, 294 (Idaho 2006).  Specifically, "a 'promise or statement that an act will be undertaken . . . is actionable, if it is proven that the speaker made the promise without intending to keep it.'" *Maroun v. Wyreless Sys., Inc.*, 114 P.3d 974, 985 (Idaho 2005) (quoting *Magic Lantern Prods., Inc. v. Dolsot*, 892 P.2d

MEMORANDUM OF DECISION - 28

480, 482 (Idaho 1995)).

Here, Mr. Thorian's deposition testimony is that Ms. Quarterman stated the foreclosure sale would be stopped. In addition, WaMu's internal notes on June 7, 2005, for the loss mitigation department in which Ms. Quarterman worked, state: "ADVD I WILL STILL CONTACT THE FCL ATTY TO STOP THE SALE." Bovee Aff. at part 7, Ex H at 31. However, Ms. Quarterman also testified that she would never have said the sale was stopped, and she would have instead advised Debtors that the sale would be postponed. Quarterman Depo. at 22, 48-49. Ms. Quarterman knew the difference between stopping and postponing a sale. Indeed, she had stopped an earlier sale, and postponed sales of the Property on previous occasions.

The Court concludes a genuine issue of material fact exists as to precisely what statements were made or what promises were given. The Court also necessarily concludes a genuine issue exists as to falsity of statements made, something that cannot be addressed until the details of the statements are established. If Ms. Quarterman said "stop" and if "stop" meant (or was understood by Ms. Quarterman to convey) "cancel," then it would be false because the sale here was not cancelled but only postponed. And, of course, such a statement, if made, would also be material as it affects the notice, if any, required to be given to

Debtors and the ability of the trustee to sell the property.[24]

Finally, there are issues of intent.  Debtors bear the burden of establishing not just what statements were in fact made but the reason they were made. Debtors have provided little to support the idea that Ms. Quarterman intended to mislead them or made a promise without intending to keep it.  However, intent is often established by evaluating testimonial credibility and inferences from all circumstantial evidence.  As this Court has noted previously, when questions of intent are raised they are rarely appropriately resolved on summary judgment.  *See Massie v. Pate (In re Pate)*, 262 B.R. 825, 830 n.6, 01.2 I.B.C.R. 59 (Bankr. D. Idaho 2001) (observing summary judgment is generally inappropriate where questions of intent and state of mind are implicated); *accord, Consol. Elec. Co. v. United States*, 355 F.2d 437, 438 (9th Cir. 1966) (reversing summary judgment, stating "[w]hen an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment").

The Court concludes genuine issues of material fact exist and those

---

[24] Idaho Code § 45-1506(8) states that a "trustee may postpone the sale of the property . . . by publicly announcing at the time and place originally fixed for the sale, the postponement to a stated subsequent date and hour.  No sale may be postponed to a date more than thirty (30) days subsequent to the date from which the sale is postponed.  A postponed sale may itself be postponed in the same manner and within the same time limitations as provided in this subsection."  Consistently, Paragraph 21 of the deed of trust allows the trustee to postpone a sale by public announcement at the time scheduled for sale.  Under Idaho law and the deed of trust, if the sale was postponed or continued, such a continuance would occur at the time of the scheduled sale and would not require further notice to Debtors.  If, on the other hand, the foreclosure sale was stopped, WaMu would again need to comply with Idaho Code § 45-1506 and the deed of trust which would require, among other things, providing a new notice of sale.

MEMORANDUM OF DECISION - 30

disputed facts affect all the elements of Debtors' claim of fraud. Therefore, WaMu's Motion as to count seven will be denied.

### 6.    Count eight: RESPA

Congress enacted RESPA to implement significant reforms in the real estate settlement process which "are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601.[25] RESPA therefore requires advance disclosures to home buyers and sellers of settlement costs; elimination of kickbacks or referral fees; and reduction in amounts in home buyers' escrow accounts for property taxes and insurance. *See* 12 U.S.C. § 2601(b). Courts have found that "Congress intended RESPA to be a remedial consumer-protection statute" and that the statute is therefore "construed liberally in order to best serve

---

[25] The Ninth Circuit further explained:

> Congress enacted RESPA in 1974 to protect home buyers from inflated prices in the home purchasing process. It sought to increase the supply of information available to mortgage consumers about the cost of home loans in advance of settlement, and to eliminate abusive practices such as kickbacks, referral fees, and unearned fees. To accomplish the first purpose, the Act requires lenders to provide borrowers with a statement identifying all settlement charges on a standardized form, commonly known as a "HUD-1," 12 U.S.C. § 2603 (West 2001), and with an information booklet prepared by HUD that counsels borrowers on how mortgage transactions work and how to recognize inflated charges.

*Schuetz v. Banc One Mortgage Corp*, 292 F.3d 1004, 1008-09 (9th Cir. 2002).

MEMORANDUM OF DECISION - 31

Congress' intent." *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F.Supp.2d 1156, 1165 (M.D. Ala. 1999) (citation omitted).

As part of these consumer protections, RESPA imposes duties upon servicers of "federally related" mortgages when they receive qualified written requests ("QWR") from borrowers. 12 U.S.C. § 2605(e); *see also Ploog v. HomeSide Lending, Inc.*, 209 F.Supp.2d 863, 868 (N.D. Ill. 2002) (noting that a servicer's obligations under 12 U.S.C. § 2605 are not triggered until a borrower sends a qualified written request). A QWR is a written correspondence, other than a writing on a payment coupon or other payment medium supplied by the servicer, that –

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

Under 12 U.S.C. § 2605(e)(1)(A), a loan servicer must provide a borrower with a written response acknowledging receipt of the QWR within 20 days of receiving it. The servicer must then take certain actions within sixty days of receiving the QWR. *See* 12 U.S.C. § 2605(e)(2).

Debtors allege that their June 6, 2005 fax to Ms. Quarterman constituted a QWR and triggered duties under RESPA that WaMu violated. The fax included

MEMORANDUM OF DECISION - 32

(1) a cover sheet, indicating the loan number; (2) Debtors' letter to Ms. Quarterman; (3) a payroll statement; and (4) the completed financial statement. Bovee Aff., at part 8, Ex. R.

WaMu argues the correspondence is not a QWR because Debtors' letter does not include the loan number. It also argues the letter was a *response* to Ms. Quarterman's June 3 letter requesting information regarding a loan modification, and therefore WaMu argues it cannot be a QWR under RESPA.

WaMu's first argument, that Debtors' June 6 letter failed to include their account number and thus did not satisfy 12 U.S.C. § 2605(e)(1)(B)(i), is not well taken. WaMu is correct that the loan number and Debtors' names are not on the letter addressed to Ms. Quarterman. However, both appear on the fax cover sheet, a part of the same correspondence, which would "enable [WaMu] to identify the name and account of the borrower." Thus 12 U.S.C. § 2605(e)(1)(B)(i) is satisfied.

To the extent WaMu argues that Debtors' June 6 letter cannot constitute a QWR because it was a *response* to Ms. Quarterman's June 3 fax, the argument is also not well taken. A borrower's letter responding to a loan servicer's communication may constitute a QWR. In *Rawlings,* a borrower responded to a notice of default by sending the loan servicer a letter stating: "This letter is written in response to your [notice of default] . . . I respectfully request that [the misapplied payments] be corrected promptly and a letter mailed to me stating that

MEMORANDUM OF DECISION - 33

such has been corrected." 64 F.Supp. 2d at 1162. When the servicer sent another

notice of default, the borrower's attorney responded to the servicer with a letter

that referenced his client's request for a payment history and requested the loan

servicer contact him immediately. *Id*. The court determined that both letters

qualified as QWRs under 12 U.S.C. § 2605(e)(1)(B). *Id*.

However, even though a responsive letter may qualify as a QWR, WaMu

correctly argues that Debtors' June 6 responsive letter is not a QWR. It does not

fall within the plain meaning of a "request" or "inquiry" that would trigger

WaMu's obligations under RESPA.[26] An "inquiry" is a "request for information."

Black's Law Dictionary 808 (8th ed. 2004). A "request" is the "act or instance of

asking for something." Webster's Collegiate Dictionary 1001 (9th ed. 1984). In

addition, RESPA's definition of a QWR at 12 U.S.C. § 2605(e)(1)(B) requires the

correspondence to allege an account error or seek some information from the loan

servicer. *Accord Rawlings*, 64 F.Supp. 2d at 1162.

Debtors' June 6 letter summarizes Debtors' view of the loan payment

history. The only possible request in the letter is the statement: "So, let us make

another payment today, as we talked, and get this back on a monthly payment."

Such a request is not a request for information or statement that the account is in

---

[26] Statutory construction begins with the words used in the statute. *See Emmert Indus. Corp. v. Artisan Associates, Inc.*, 497 F.3d 982, 985 (9th Cir. 2007) (citations omitted). 12 U.S.C. § 2605(e)(1) is entitled "notice of receipt of *inquiry*" and defines a "qualified written *request*" upon which a loan servicer's duties are triggered. *See* 12 U.S.C. §§ 2605(e)(1) and (2). Thus the plain meaning of "inquiry" and "request" are relevant to this Court's analysis.

MEMORANDUM OF DECISION - 34

error. *See* 12 U.S.C. § 2605(e)(1)(B)(ii).

In addition, as WaMu points out, the June 6 letter was part of a packaged response to Ms. Quarterman's June 3 fax and it included not only the letter, but Debtors' completed financial statement and a paystub in an attempt to support a loan modification. Viewing the correspondence as a whole, the June 6 letter was an attempt to explain or supplement the accompanying financial information. Indeed, Debtors wrote the June 6 letter pursuant to Ms. Quarterman's June 3 fax.

The Court concludes that Debtors' June 6 letter is not a QWR within the plain meaning of the statute and WaMu's duties under 12 U.S.C. § 2605(e) never arose.

Based on the above analysis, WaMu's Motion on count eight regarding alleged violations of RESPA will be granted and Debtors' Motion will be denied.

## 7.    Count nine: Idaho Consumer Protection Act

As noted above, Debtors allege in their Amended Complaint that WaMu violated the ICPA. However, Debtors have since abandoned this claim, and they specifically consented to dismissal of count nine in their memorandum in support of their motion for summary judgment. *See* Doc. No. 92 at 18 (noting that "case law supports WaMu's position on the Consumer Protection Act" cause of action). As there is no genuine issue of material fact in dispute and the parties agree the law supports WaMu's Motion, the Court will grant WaMu's Motion as to count nine.

MEMORANDUM OF DECISION - 35

**8.    Other counts**

No party has brought a motion for summary judgment on count two (claim against holders of other deeds of trust), count three (reinstatement of liens improperly foreclosed) or count four (cure of defaults by plaintiffs on all secured claims on their principal residence). As such, the Court does not address them here.

**CONCLUSION**

Based on the foregoing, the Court holds:

1.    Debtors' motion to amend their Amended Complaint will be denied.

2.    WaMu's and BARO's Motions will be granted on count one (fraudulent transfer), and WaMu's Motion will be granted on counts eight (RESPA) and nine (ICPA).

3.    WaMu's Motion will be denied on counts five (breach of contract), six (good faith and fair dealing) and seven (fraud).

4.    Debtors' Motion will be denied.

Counsel for WaMu shall submit an appropriate form of order.

DATED: March 21, 2008



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 36